UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KENNETH MCBRIDE, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, <br><br> Respondent. | CAUSE NO.: 3:19-CV-50-RLM-MGG |

OPINION AND ORDER

Kenneth McBride, a prisoner without a lawyer, filed a habeas corpus petition challenging his 2012 convictions in Marion County for criminal confinement and robbery. For the reasons stated below, the court denies his petition.

I. BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It's Mr. McBride's burden to rebut this presumption with clear and convincing evidence. *Id.* The Indiana Court of Appeals set forth the facts underlying Mr. McBride's convictions as follows:

> On March 7, 2012, around 4:30 p.m., Officer Ryan Irwin of the Indianapolis Metropolitan Police Department (IMPD) responded to the dispatch of a robbery in progress at the Oriental Market (Market), a grocery store on Lafayette Road owned by Bay Le Zhu (Zhu) and her husband. Officer Irwin arrived within one minute and found that the employees, two of whom had obvious injuries, and Zhu's six-year-old son Brian were locked inside the Market. Irwin also found a twelve gauge shotgun lying on the ground next to the market.

It was later established that Zhu, Brian, Zhu's nephew Yixiu Chen (Yixiu), Kia Wong (Wong) and his wife, Cai Nong Chen (Cai), were all at the market when McBride and two other men, each armed and wearing dark clothing, gloves, and masks, entered the Market through a back door and locked the door behind them. The men confined everyone in the kitchen, striking several of the victims with their guns and binding their hands and legs with duct tape. After the men demanded money, Zhu gave them $1200 that she had in her pocket and was escorted out of the kitchen to the cash register, where they took additional money. When Van Duong, a regular customer, came by, he noticed that the door was locked even though the lights were on and the "open" sign was displayed. Suspicious, Duong peered through the Market window and observed masked men but none of the store employees. When he looked again, he saw Zhu taking money from the register, and she gave him a sign to call for help.

McBride and the other men escaped in Wong's vehicle, taking with them Wong's cell phone, Yixius's cell phone and many of his keys including his house and the Market keys, Zhu's purse and keys, the $1200 that Zhu had on her, and the money from the cash register. Duong got a good look at McBride and provided the license plate number of the getaway vehicle to the 911 dispatcher. He also reported that the vehicle had traveled south on Lafayette Road. Officers located the vehicle after a citizen reported seeing someone flee from the vehicle.

At around 5:00 p.m., McBride and his co-defendant, Adrian Jackson, were apprehended. They were found crouched down between a wood deck area and a garage, wearing dark clothing and shoes matching those worn by the robbers. Around and under the deck where McBride and Jackson were apprehended, the officers recovered several pieces of dark clothing, including a stocking cap mask, three dark gloves, the distinctive jacket worn by one of the men during the robbery with a Bic lighter in it that matched McBride's DNA, multiple cell phones, a set of keys, and a small purse, all of which were items taken from the victims during the robbery. Additionally, a piece of foreign currency and a rifle with Jackson's DNA were recovered. Officers also found $622 on McBride and $1106 on Jackson.

Jackson and McBride were arrested and taken to the police station and Zhu, Cai, Wong, and Duong were brought over for a show-up identification. All but Wong identified either one or both men as the robbers with seventy to one hundred percent certainty. Duong positively identified both men, stating that Jackson was the

driver and McBride was the front seat passenger in the getaway vehicle.

On March 9, 2012, the State charged McBride with Counts I and II, class B felony criminal confinement, Counts III, IV, and V, class B felony robbery, and Counts VI, VII, VIII, class C felony battery. On March 13, 2012, McBride was appointed a public defender. On that day he also made a pro se request for a speedy trial, but on May 10, 2012, his counsel requested a continuance, which the trial court granted. McBride was unhappy about his appointed counsel's decision to request a continuance despite his speedy trial request and proceeded to file motions and briefs pro se. McBride claimed that because his appointed counsel sought a continuance against his will and was not doing what he asked her to do, she had violated his constitutional right to counsel as well as the rules of professional conduct.

On July 31, 2012, a waiver of counsel hearing was held, during which McBride asked the trial court if he could proceed as co-counsel. This request was denied because the trial court stated he was attempting to take the lead in his own defense, thus placing his counsel at risk. McBride then petitioned the trial court to proceed pro se.

At a later hearing on August 16, 2012, the trial court questioned McBride about his knowledge of the requirements for pro se litigants and advised McBride of the responsibilities, dangers, and disadvantages that he might face by proceeding pro se. The trial court also told McBride he was responsible for objections and that objections are the manner in which he could preserve issues for appeal. The trial court specifically told McBride that if objections are not made during trial, that particular issue would be waived on appeal. During the advisement of rights hearing, the trial court was not convinced that McBride would be prepared to proceed pro se and expressed this concern to McBride several times. McBride acknowledged the fact that he needed counsel but refused to allow his appointed counsel to represent him because according to him, his rights had been violated by the appointed counsel.

Having been informed of no specific instance of how McBride's rights had been violated by his counsel, the trial court told McBride that if he felt he needed counsel, he would have to accept his appointed counsel because there was no evidence that the appointed counsel had done anything wrong, and McBride did not have the right to counsel of his choice.

>           The trial court also verified that McBride had the educational background and mental capacity to defend himself and that no one had made either promises or threats to coerce him into waiving his right to counsel. After the trial court read the advisement of rights, McBride still insisted on representing himself and signed a written advisement form stating that he had thoroughly reviewed all the dangers and disadvantages of self-representation and had full knowledge of them. Although the trial court granted McBride's request to proceed pro se, it also appointed McBride with "standby counsel" that could answer questions about trial procedure.
>
>           A jury trial was held from September 17–19, 2012. On September 19, 2012, the State dismissed Count VIII, and the jury found McBride guilty on Counts I through VII. During McBride's sentencing hearing on October 5, 2012, the trial court merged Count I into II, Count VI into Count III, and Count VII into Count IV and sentenced McBride to six years of incarceration on Count II and eight years each on Counts III, IV, and V, with each sentence to run consecutively, for a total aggregate sentence of thirty years.

McBride v. State, 992 N.E.2d 912, 914-16 (Ind. Ct. App. 2013) (footnotes omitted).

On direct appeal, Mr. McBride was represented by counsel and raised the following claims: (1) the trial court erred when it let him proceed *pro se* because his waiver of counsel wasn't knowing, voluntary, and intelligent; (2) the trial court committed fundamental error when it admitted evidence obtained through an improper show-up identification procedure; (3) the trial court abused its discretion in imposing consecutive sentences; and (4) his sentence was inappropriately long under Indiana Appellate Rule 7(B). *Id.* at 916-920. The Indiana Court of Appeals rejected these arguments. The court concluded that Mr. McBride made a knowing and intelligent waiver of his right to counsel; that he waived any objection to the show-up identification and that the identification procedure didn't amount to a fundamental error; and that the trial court didn't

4

abuse its discretion in imposing the sentence. *Id.* at 921. The court affirmed Mr. McBride's convictions and sentence in all respects. *Id.* Mr. McBride filed a petition to transfer to the Indiana Supreme Court, raising one claim: that the trial court committed reversible error when it permitted him to proceed *pro se.* The Indiana Supreme Court denied transfer. McBride v. State, 999 N.E.2d 417 (Ind. 2013).

Mr. McBride then filed a state post-conviction petition. (ECF 12-8.) The evidentiary hearing was rescheduled several times due to Mr. McBride's requests to amend the petition and for continuances of the hearing. A hearing was finally held on December 6, 2016, but the docket reflects that Mr. McBride didn't appear. The petition was denied, and Mr. McBride didn't pursue an appeal.

In January 2017, Mr. McBride filed a "motion to correct sentence" in the trial court. The motion was denied. He later sought and was granted leave to pursue a belated appeal of the trial court's order. On appeal, he raised one claim: that the trial court erred in refusing to correct his sentence, because consecutive sentences should not have been imposed under state law. McBride v. State, 111 N.E.3d 257 (Table), 2018 WL 4290642, at *2 (Ind. Ct. App. Sept. 5, 2018). The Indiana Court of Appeals concluded that the claim was barred by res judicata: Mr. McBride had already litigated the propriety of his consecutive sentences on direct appeal. The court also found no merit to Mr. McBride's argument, because the trial court appropriately relied on several aggravating factors to impose consecutive sentences, including the existence of multiple victims and the young age of one of the victims. The court rejected Mr. McBride's argument that his

5

sentence violated a state statutory cap for a "single episode of criminal conduct," because the cap didn't apply to crimes of violence. The Indiana Supreme Court denied transfer. McBride v. State, 119 N.E.3d 90 (Ind. 2018).

Mr. McBride then filed this federal petition raising the following three claims: (1) his Sixth Amendment right to counsel was denied when the trial court permitted him to proceed *pro se*; (2) his sentence violated the "14th and 5th Amendment Due Process and Double Jeopardy Clause[s]"; and (3) he was "denied due process and effective assistance of counsel by the admission of [the] show-up line-up." (ECF 1 at 3-4.)

## II.   ANALYSIS

Mr. McBride's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, which permits a court to grant habeas relief to a person in custody pursuant to a state court judgment "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." Hoglund v. Neal, 959 F.3d 819, 832 (7th Cir. 2020) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" Hoglund v. Neal, 959 F.3d at 832 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); Hoglund v. Neal, 959 F.3d at 832. The exhaustion requirement flows from recognition that the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. Davila v. Davis, 137 S. Ct. 2058, 2064 (2017); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review. Baldwin v. Reese, 541 U.S. 27, 30-31 (2004); O'Sullivan v. Boerckel, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. O'Sullivan v.

7

Boerckel, 526 U.S. at 848. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim if the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground, or if the claim was not presented to the state courts and the time for doing so has passed. Davila v. Davis, 137 S. Ct. 2058, 2064 (2017); Coleman v. Thompson, 501 U.S. 722, 735 (1991).

In claim one, Mr. McBride asserts that his Sixth Amendment right to counsel was denied when the trial court permitted him to proceed *pro se*. The Indiana Court of Appeals rejected this argument on direct appeal, concluding that Mr. McBride made a "knowing, voluntary, and intelligent waiver of his right to counsel." McBride v. State, 992 N.E.3d at 921. Mr. McBride hasn't established that this decision was contrary to or unreasonable application of Supreme Court precedent.

The Sixth Amendment affords criminal defendants the right to counsel, but a defendant also has a qualified right to self-representation if he so chooses. Faretta v. California, 422 U.S. 806, 835 (1975). "This is true despite the fact that it is generally foolish for a person defending serious criminal charges to proceed without counsel." Tatum v. Foster, 847 F.3d 459, 461 (7th Cir. 2017). The Supreme Court has held that trial judges should advise defendants of the dangers of self-representation before they can make a knowing, voluntary, and intelligent waiver of counsel. Faretta v. California, 422 U.S. at 835. A waiver's validity is "case specific," Jean-Paul v. Douma, 809 F.3d 354, 359 (7th Cir. 2015),

and depends on the particular facts of the case, the background of the defendant, his experience, and his actions. Iowa v. Tovar, 541 U.S. 77, 81 (2004). Trial judges are "entitled—indeed encouraged—to warn defendants of the risks that attend self-representation." Tatum v. Foster, 847 F.3d at 461. "In the end, however, *Faretta* requires them to honor the defendant's wishes, assuming that the defendant is generally competent." *Id.* It is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel. Iowa v. Tovar, 541 U.S. at 92.

In rejecting this claim on direct appeal, the Indiana Court of Appeals recognized Mr. McBride's Sixth Amendment right to proceed without counsel, and applied state case law consistent with Faretta and Tovar in determining that his waiver of counsel was knowing and voluntary.[1] McBride v. State, 992 N.E.2d at 916-18. The record amply supports the court's determination.

There is nothing in the record to suggest, nor does Mr. McBride argue, that he suffers from a mental impairment or was otherwise incompetent to make the decision to proceed without counsel. Instead, he argues that he didn't knowingly and voluntarily waive his right to counsel because the trial court forced him to proceed *pro se*, but the record contradicts this argument. The trial court held two hearings on Mr. McBride's request to represent himself. The first was

---

[1] A state court needn't cite to or even be aware of applicable Supreme Court case law "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002).

9

conducted by a judge *pro tempore*,[2] who explored whether Mr. McBride wanted to proceed on his own, because he persisted in filing *pro se* motions and briefs even though he was represented by public defender Jennifer Harrison. It's apparent that no formal decision was made at that hearing whether Mr. McBride would be allowed to represent himself, as both Mr. McBride and Ms. Harrison appeared for a second hearing before the presiding judge on August 16, 2012, during which the judge conducted a thorough inquiry into Mr. McBride's request to proceed without counsel. The court repeatedly warned Mr. McBride about the dangers of proceeding without counsel and emphasized the responsibilities he would have at trial if he elected to represent himself. The court told Mr. McBride more than once that, based on the court's own experiences with Ms. Harrison, she was an effective and competent attorney. The court stated that it saw no conflicts or errors in Ms. Harrison's representation to date, and instructed Mr. McBride that he was not entitled to the court-appointed attorney of his choosing.

The court further advised Mr. McBride that his choices were to retain an attorney of his choosing, remain represented by Ms. Harrison as court-appointed counsel, or proceed on his own. Mr. McBride was clear that if those were the choices, he preferred to represent himself. He answered a series of questions from the court indicating that he understood the dangers of proceeding on his own and the responsibilities he had if the case proceeded to trial. He affirmed

---

[2] A judge *pro tempore* is a temporary judge appointed by the circuit court to perform certain limited functions, including conducting preliminary hearings in criminal matters. *See* IND. CODE §§ 33-38-11-1, 33-38-11-2.

that he was waiving his right to counsel freely and voluntarily. The court granted Mr. McBride's request to proceed *pro se*, but also appointed Ms. Harrison as standby counsel to assist him during the trial. On the day of the trial, Mr. McBride represented to the court that he was prepared to proceed, and he was an active participant in the trial proceedings. Among other things, he raised issues about the state's discovery production, carefully parsed through the jury instructions, gave an opening statement, cross-examined witnesses, including conducting a detailed questioning of the state's DNA expert, objected to the admission of evidence, and made a lengthy closing argument pointing out inconsistencies in the witnesses' accounts. Mr. McBride also argued for leniency at sentencing. In imposing the sentence, the court commented to Mr. McBride that he appeared to be a "very smart individual."[3]

Some of Mr. McBride's answers to the court's questions during the waiver-of-counsel hearing appear equivocal, but not for any confusion or misunderstanding by Mr. McBride. Rather, it appears he was trying to "hedge his bets" by both demanding a different court-appointed attorney and asking to proceed *pro se*. At one point, he requested that he be permitted to proceed as "co-counsel" with Ms. Harrison, but the court rightly rejected this suggestion as untenable. Indiana doesn't allow such "hybrid" representation. *See* McNair v. State, 147 N.E.3d 1053 (Ind. Ct. App. 2020) ("[T]he law is clear that once counsel

---

[3] The record reflects that Mr. McBride had some familiarity with the criminal justice system before the trial in this case: he had prior convictions for felony battery and resisting law enforcement as well as a juvenile record.

is appointed, a defendant speaks to the trial court through counsel and the trial court is not required to respond to a defendant's request or objection.").

Our court of appeals has recognized that "[a] knowing and intelligent waiver" under Faretta "need not be explicit." United States v. Thomas, 833 F.3d 785, 792 (7th Cir. 2016). "[S]o long as the district court has given a defendant sufficient opportunity to retain the assistance of appointed counsel, defendant's actions which have the effect of depriving himself of appointed counsel will establish a knowing and intentional choice." *Id.* (citation omitted). Mr. McBride's representations to the court as well as his actions—namely, his continued filing of *pro se* documents despite admonishments by the court that he must speak through his counsel—evidenced that he did not want Ms. Harrison's assistance. After questioning him, the court found him "clear thinking," albeit "pretty hardheaded." The court gave him the opportunity to keep Ms. Harrison as his counsel, retain counsel of his choosing, or proceed on his own, and fully advised him of the dangers of proceeding without counsel. Mr. McBride made it clear that he wouldn't proceed further with Ms. Harrison as his counsel and that, given those choices, he was electing to represent himself.

Mr. McBride says the court should have given him a different court-appointed attorney when he became dissatisfied with Ms. Harrison, but as the Indiana Court of Appeals observed, he had no general Sixth Amendment right to free representation by the attorney of his choosing. *See* United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006); Wheat v. United States, 486 U.S. 153, 159 (1988). Nothing in the record suggests that Ms. Harrison was unqualified or

had a conflict that prohibited her continued representation. Rather, Mr. McBride's arguments before the trial court were premised on the fact that Ms. Harrison requested a continuance of the trial date, even though Mr. McBride wanted a speedy trial.[4] As the trial court explained to him, this was a complex case involving multiple charges and victims. The case had only been pending for a few months at that point, and Ms. Harrison had an ethical obligation to ensure that she was adequately prepared to proceed to trial. Mr. McBride simultaneously complained to the court that Ms. Harrison had not yet conducted depositions and a "photo line-up" with each victim, but as the trial court explained, such actions would take time to complete. The record suggests that Ms. Harrison did actually depose some of the witnesses before Mr. McBride terminated her representation.

In summary, the record shows that Mr. McBride made the choice to proceed *pro se* with his "eyes open." Faretta v. California, 422 U.S. at 835. His decision to represent himself on serious criminal charges might have been unwise, but Faretta protects his right to make that choice. *Id.*; *see also* United States v. Thomas, 833 F.3d at 793 (defendant's decision to proceed without counsel was knowing and voluntary, where two hearing were held on defendant's request, he was adequately advised of the dangers of proceeding without counsel, and he had a basic understanding of the charges and potential penalties). The

---

[4] The record doesn't show any undue delay in the proceedings. It reflects that Mr. McBride appeared for an initial hearing on March 9, 2012, and Ms. Harrison was appointed on March 13. The trial was originally scheduled for May 22. On May 10, counsel requested a continuance of the trial date. The trial was rescheduled for July 23. In early July, the state requested a continuance, to which Ms. Harrison didn't object. The trial was then rescheduled for September 17, and it proceeded on that date.

Indiana Court of Appeals' resolution of this claim was not contrary to or an unreasonable application of Supreme Court precedent. Accordingly, the claim is denied.

In claim two, Mr. McBride asserts that his sentence violated the "14th and 5th Amendment Due Process and Double Jeopardy Clause[s]." (ECF 1 at 3.) The respondent argues that this claim is procedurally defaulted. (ECF 12 at 8.) To properly exhaust a claim under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner must "present both the operative facts and the legal principles that control each claim" at each level of state review. Stevens v. McBride, 489 F.3d 883, 894 (7th Cir. 2007). This includes alerting the state court to the "federal nature" of the claim. Baldwin v. Reese, 541 U.S. 27, 33 (2004). Mr. McBride didn't do that for this claim. Instead, his challenges to his sentence rested on state law. He cannot assert a federal claim in this federal proceeding that he didn't exhaust in state court. Nor can he reassert his state-law challenges to his sentence, because errors of state law don't provide a basis for granting federal habeas relief. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Mr. McBride filed a traverse in support of his petition, but didn't respond to the state's procedural default argument or provide grounds for excusing his default. (*See* ECF 21.) Therefore, the court can't consider this claim on the merits.

In claim three, Mr. McBride asserts that he was "denied due process and effective assistance of counsel by the admission of [the] show-up line-up." (ECF 1 at 4.) The respondent argues that this claim is also procedurally defaulted. Mr. McBride raised the show-up claim on direct appeal before the Indiana Court of

14

Appeals, but he didn't include the claim in his petition to transfer. He didn't raise any ineffective assistance of counsel claim on direct appeal or on appeal of the denial of his motion to correct his sentence. Because he didn't assert these claims in his state appeals and the time for doing so has passed, they, too, are procedurally defaulted. Mr. McBride doesn't acknowledge his default or provide any grounds for excusing it, so the court can't consider this claim on the merits, either.

      Rule 11 of the Rules Governing Section 2254 Cases requires a court to either issue or deny a certificate of appealability whenever it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Mr. McBride's claims are not cognizable in this proceeding, procedurally defaulted, or otherwise without merit under governing standards. The court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Mr. McBride to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

III. CONCLUSION

For the reasons set forth above, the petition (ECF 1) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to enter judgment for the respondent.

SO ORDERED on August 19, 2020

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT
